**IN THE COURT OF APPEALS OF IOWA**

No. 21-1933
Filed March 2, 2022

**IN THE INTEREST OF T.M.,**
**Minor Child,**

**M.M., Father,**
    Appellant.
_____

Appeal from the Iowa District Court for Story County, Stephen A. Owen, District Associate Judge.

A father appeals the termination of his parental rights. **AFFIRMED.**

Larry J. Pettigrew of Pettigrew Law Firm, P.C., Newton, for appellant father.

Thomas J. Miller, Attorney General, and Toby J. Gordon, Assistant Attorney General, for appellee State.

Matthew Mauk, Ames, attorney and guardian ad litem for minor child.

Considered by Bower, C.J., and Vaitheswaran and Chicchelly, JJ.

**BOWER, Chief Judge.**

A father appeals the termination of his parental rights.[1]  In conducting our de novo review of the termination of the father's parental rights, we consider three steps: (1) whether the State's evidence supports a ground for termination under Iowa Code section 232.116(1) (2021); (2) whether termination is in the child's best interests based on the factors in section 232.116(2); and (3) whether any exceptions to termination apply under section 232.116(3).  *In re M.W.*, 876 N.W.2d 212, 219–20 (Iowa 2016).

T.M. was born in December 2019 and was just shy of three years old at the time of the termination-of-parental-rights hearing.  The family came to the attention of the department of human services (DHS) when the child was born and the mother reported having used methamphetamine throughout her pregnancy; she expected the child's umbilical cord to test positive for the substance.  The father and mother have acknowledged methamphetamine use.  In addition to substance abuse, domestic violence and the father's mental health were issues to be addressed in the ensuing juvenile court proceedings and DHS services.

T.M. was adjudicated a child in need of assistance (CINA) on December 27, 2019, and was three years of age or younger.  *See* Iowa Code § 232.116(1)(h)(1), (2).  T.M. has been removed from parental custody for at least six of the last twelve months and could not be returned to the father's custody at the time of the termination hearing because the father was in jail and facing additional jail time.  *See id.* § 232.116(1)(h)(3), (4).  Consequently, there is clear and convincing

---

[1] The State dismissed the petition to terminate the mother's parental rights.

evidence to support termination of parental rights under Iowa Code section 232.116(1)(h).

The father argues that even if grounds for termination exist, termination is not in the child's best interests. He seeks additional time to work toward reunification. In determining whether termination is in the child's best interests, we must "give primary consideration to the child's safety, to the best placement for furthering the long-term nurturing and growth of the child, and to the physical, mental, and emotional condition and needs of the child." *Id.* § 232.116(2).

On our de novo review of the record, we make note of the following. For a period in 2020, the parents appeared to be making progress and, at a March 12, 2021 permanency hearing, all parties expected closure of the CINA case on June 10.

Unfortunately, days after the permanency review hearing, motorists reported to police they witnessed the father beating the mother in a car while he was driving—T.M. was a passenger.

On April 21, the mother, father, and child were again in a car. "This time witnesses called police to report a man dragging a woman with a car. She was screaming for help. Police found the vehicle. [The father] was driving. [The mother] was in the backseat with [T.M.] covered in pizza sauce with a wound to her head." The father was arrested for interference with official acts.

On April 30, the family's DHS case manager visited the home. The mother was wearing heavy makeup and tinted glasses in the home. She had an injury to her eye and forehead and offered accounts of how the injury occurred ranging from tripping over a container and hitting her eye, to being in a bar fight with another

woman. The juvenile court concluded the mother "was assaulted by [the father] in the home where the child resides. [The mother's] attempt to cover up the continuing domestic abuse is not credible but is consistent with domestic abuse survivors who attempt to protect their abuser by hiding the abuse they have suffered."

On May 3, the mother went to the maternal grandmother's home with the child. The father came to the house and convinced the women to allow him in and to stay the night. Then, the father began to verbally abuse the mother, and the grandmother asked him to leave the house. He tried to take the child with him as he left the house, but the grandmother tried to keep the child. The father pushed the grandmother to the ground and left with T.M., driving away with the child on his lap. The mother was seen naked running after the car. Referencing this incident, the juvenile court found:

> The circumstances leading to this event were again the result of [the father's] abuse of [the mother] and his attempt to manipulate a situation to his own ends of control and dominance. The parents' attempt to minimize and explain away this incident is not persuasive and is not credible. [He] was verbally abusing [her] and attempting to remove [the child] from a safe place leading to the assault of [the maternal grandmother] as well and danger to [T.M.]

A child abuse investigation began, but the parents refused to cooperate or produce the child. The parents then disappeared with the child and would not inform DHS or the maternal grandmother where they were or when they would return. There was an active arrest warrant out for the father due to his failure to appear at a proceeding regarding the charge of interference with official acts.

On June 1, the father obtained a prescription for a brand name of methamphetamine for his attention deficit hyperactivity disorder from a doctor he'd not seen for five years in South Dakota.

DHS was able to locate the family in early June and obtained a temporary removal order for the child.

The court's June 15, 2021 review of the temporary removal order concluded:

> [T.M.] is not safe in her parents' care. She has been placed in danger by her father engaging in instances of "rolling domestic abuse" in which he cared more about physically assaulting the mother in a moving car than operating the car safely when [the child] is a passenger. The parents are engaged in drug seeking. They travel across the state and surrounding states not to vacation or look for work but to obtain drugs. The record today—including [the father's] own testimony, is that the only product of their travels in May and June was to obtain methamphetamine and avoid DHS protective supervision. On this record the court finds that whether [the father's] use of methamphetamine is legal or not, it is irresponsible and dangerous given the parental history of methamphetamine abuse by both parents. [The father] has other pharmaceutical options, he purposefully chose the most dangerous option in this case.
>
> The parents' testimony was rambling. They could not focus and drifted off into tangents. Their demeanor was argument[at]ive and they often claimed ignorance or faulty memory to avoid the truth of the matter. They are not credible witnesses and their testimony is consistent with DHS contact with them in which they seem unfocused and avoidant.
>
> [The child] continues to be exposed to domestic violence, drug abuse and unstable mental health in her home. Her continued exposure to domestic violence creates imminent risk of physical and emotional harm to [the child] as shown by the testimony of the State's witnesses. The parents reference suicide. The parents' substance abuse and unstable mental health has seriously dim[in]ished their ability to protect [T.M.] She is exposed to violence in vehicles and homes by her parents.

DHS planned to place the child in the maternal grandmother's care. However, the mother made a threatening call to the grandmother, and the

grandmother informed the DHS caseworker she could not provide safe care for the child.  The court thus continued the child's placement in foster family care and scheduled a permanency review hearing.

The parents moved to review and vacate the court's June 15 order.  The juvenile court held a hearing on July 8 after which it rejected the motions, making lengthy findings about the parents' offered exhibits and determining:

> [The parents'] exhibits on the whole merely reflect their rejection of reasonable efforts and an attempt to wrest control of choosing reasonable efforts from the court and DHS.  What the record actually ref[l]ects is [a]n ongoing and willful rejection of reasonable efforts to substantially and meaningfully address drug use, mental health and domestic violence.  As [the case worker] astutely observes, the parents have consistently chosen providers but have failed to fully address child safety leading to ongoing risks of harm to [the child].  As noted, they most recently rejected a reasonable DHS offer of a parenting evaluation.
>
> Based on the foregoing, the court concludes that [T.M.] imminently likely to suffer harmful effects if returned to her parents care and custody.  Domestic violence remains in [the child's] home, in fact it has spilled into the home of the maternal grandmother and the streets . . . .  The parents avoid ongoing child-safety issues and their responsibility for [T.M.'s] safety.

A July 22 permanency review hearing was held.  On July 23, the juvenile court entered an order, changing the goal from reunification to termination of parental rights.  The court observed:

> The parents have refused services.  They see counselors of their choosing and engage in their own drug screens.  The counselors provide letters to the court giving only superficial information.  The parents are not engaging in relevant and material individual counseling that addresses their ongoing erratic and dangerous behavior.  The parents also seek their own drug testing which is not random and for which the analytical processes and collection procedures have been credibly called into question.
> . . . .
> The court finds the history of this case since November 2020 to be a good indicator of future performance.  It is unlikely the parents will acknowledge or address in any substantial or meaningful way the

ongoing harm to [T.M.] that their erratic and abusive behavior continues to pose to her safety. This case has been open for 18.5 months. It is now again at the point where it began. The parents refuse services or do not respond to them. Their interpersonal and interfamily relationships cycle through chaos to harmony and back again. A fact acknowledged in the parents' closing argument.

[T.M.] deserves permanency in a safe and stable home where she is not exposed to ongoing erratic, dangerous and abusive behavior. She deserve supervision by a parent who does not "legally" seek the very drug to which he has been addicted. She deserves a parent who puts her safety first and does not continue relationships with abusers.

On August 7, the father set fire to the family home, rendering it uninhabitable. At the time of the fire, he was on probation for introduction of illegal substances into a jail. He was arrested and jailed on charges of arson and criminal mischief. He remained in jail awaiting trial at the time of the termination hearing on November 18.

At the termination-of-parental-rights hearing, the State dismissed the termination petition as to the mother. The hearing proceeded with respect to the father's rights only. The juvenile court addressed the father's testimony:

As usual he demonstrated his mastery of control. He is able to call upon any apparent outward expression of emotion at a moment's notice. To his credit he did admit to a history of substance abuse and domestic violence, however, he would also attempt to minimize or deflect responsibility onto others for individual instances of domestic violence or drug abuse. For example, he admitted to using methamphetamine, but claims he would do so only in social situations when it was offered to him and he never engaged in drug seeking behavior. This is contrary to his conviction for introducing meth to a jail. [His] testimony is not wholly un-credible nor wholly credible. He loves his daughter, which is not disputed. However, he minimizes and deflects issues and occurrences surrounding drug abuse and domestic violence. As to these issues, the truth is present but his testimony attempts to elude the naked truth. The court assigns only a limited degree of credibility to his testimony.

We give weight to the juvenile court's findings as to credibility because of its superior position to observe the witnesses and their demeanor. *See In re K.P.*, No. 13-0100, 2013 WL 1457845, at *4 (Iowa Ct. App. Apr. 10, 2013).

The following findings of the juvenile court are fully supported by our de novo review of the record, and we adopt them here:

> This case has been open for two years. Its origins lie in events happening in the fall of 2019 with drugs and domestic violence in the family home before [T.M.] was even born. The case commenced when [T.M.] was born drug effected, her mother the victim of domestic violence and her father jailed for that violence. It ends today, with her father in jail for violence against [T.M.]'s safety and stability and her mother a recovering survivor of multiple forms of domestic violence perpetrated against her by [the father].
>
> As the [guardian ad litem (GAL)] and court recognize, the parents were given multiple opportunities for case closure from November 2020 through June 2021. The court extended the case closure date twice. By October 2020 and again in March 2021, it appeared successful case closure was imminent only to be frustrated by [the father's] increasingly overt and dangerous acts of violence against his family.
>
> This case has been open for two years. [The father] was responding to services for only a period of time from about February 2020 to October 2020. However, and this is critical for the direction the case has ultimately taken, he never addressed domestic violence in his relationship with the mother through individual or family counseling. Since October 2020 he has refused every service offered to address his substance abuse, mental health and domestic abuse. Six more months will not change the trajectory of domestic violence in this case.

Like the juvenile court, we conclude no additional extension of time is warranted. *See In re Z.P.*, 948 N.W.2d 518, 523–24 (Iowa 2020) (noting the "legislature has carefully constructed a time frame to provide a balance between the parent's efforts and the child's long-term best interests"). It is in the child's best interests to now be freed from the danger of violence and domestic abuse perpetrated by the father.

The father also contends termination should be avoided because he loves and has a close bond with his child. Iowa Code section 232.116(3)(c) permits the court to decline terminating a parent's rights if "[t]here is clear and convincing evidence that the termination would be detrimental to the child at the time due to the closeness of the parent-child relationship." The exceptions in section 232.116(3) are permissive, not mandatory, and the parent relying on an exception has the burden of proving its applicability. *In re A.S.,* 906 N.W.2d 467, 475–76 (Iowa 2018). We've no doubt the father loves the child. But there is not clear and convincing evidence that termination of the father's rights would be detrimental to T.M. due to the closeness of the parent-child relationship.

Because grounds for termination exist, further extension of time is unwarranted, the child needs and deserves to live in a drug- and violence-free home, and no permissive factor weighs against termination, we affirm.

**AFFIRMED.**